UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID MEDINA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 21-cv-02431 |
| ) | |
| AUTOMATED CONVERTING ) | **PLAINTIFF DEMANDS TRIAL** |
| SOLUTIONS, INC., a/k/a ACS, an Ohio ) | **BY JURY** |
| Corporation, and MIDWEST CANVAS ) | |
| CORPORATION, an Illinois Corporation, ) | |
| ) | |
| Defendants. ) | |

## FIRST AMENDED COMPLAINT AT LAW

NOW COMES the Plaintiff, DANIEL MEDINA, by and through his attorneys, COGAN & POWER, P.C., and complaining of Defendants, AUTOMATED CONVERTING SOLUTIONS, INC., a/k/a ACS (hereinafter "ACS"), and MIDWEST CANVAS CORPORATION (hereinafter "MCC"), states as follows:

### COUNT I – STRICT PRODUCTS LIABILITY
### (AUTOMATED CONVERTING SOLUTIONS, INC., a/k/a ACS)

1. On and before October 19, 2020, ACS was an Ohio corporation with its principal place of business in Beloit, Ohio.

2. On and before October 19, 2020, ACS was engaged in the business of designing, manufacturing, advertising, distributing, selling, installing, and maintaining material handling machines to businesses, including, but not limited to, Defendant, MCC, located at 4635 W. Lake Street, City of Chicago, State of Illinois, County of Cook.

3. On and before October 19, 2020, ACS designed, manufactured, distributed, and sold a material handling machine to MCC to be used at the MCC manufacturing plant located at 4635 W. Lake Street, City of Chicago, State of Illinois, County of Cook.

4. On and before October 19, 2020, the aforesaid ACS material handling machine

was installed and operated at the MCC manufacturing plant located at 4635 W. Lake Street, City of Chicago, State of Illinois, County of Cook.

5. At all times relevant herein, ACS had a duty to design, manufacture, advertise, distribute, sell, install, and maintain its material handling machines in non-defective conditions which, when operated in the foreseeable and intended manner, did not become unreasonably dangerous.

6. On October 19, 2020, Plaintiff, DAVID MEDINA, was operating an ACS material handling machine manufactured, designed, and placed into the stream of commerce by ACS, in the machine's foreseeable, intended manner when, suddenly and without warning, the ACS material handling machine malfunctioned, drawing Plaintiff's arm into the machine and causing the Plaintiff severe and traumatic injuries.

7. Despite ACS's duties, on October 19, 2020, ACS was then and there in breach of said duties by designing, manufacturing, marketing, and distributing a material handling machine which was:

   a. Unreasonably dangerous due to the design defects and/or omissions at the time the equipment left the control of ACS;

   b. Unreasonably dangerous due to manufacturing defects and/or omissions;

   c. Unreasonably dangerous due to the absence of adequate, if any, safeguards or safety cut-off devices reasonably calculated to prevent the type of injury suffered here by the Plaintiff;

   d. Unreasonably dangerous due to the absence of adequate, if any, warnings to the user of the product of the high degree of risk involved with the use of the product; **or**

   e. A practical and technically feasible alternative design was available that would have prevented the harm suffered by the Plaintiff without significantly impairing the usefulness, desirability or marketability of the ACS product.

8. As a proximate result of one or more of the aforementioned conditions of the

product, Plaintiff, DAVID MEDINA, sustained severe and permanent injuries, and, as a result, has suffered losses of a personal and pecuniary nature, including, but not limited to, economic losses, medical expenses, pain and suffering, disfigurement, disability, and loss of a normal life. These losses have been incurred in the past and are reasonably certain to occur in the future. All or some of them are permanent.

WHEREFORE, Plaintiff, DAVID MEDINA, respectfully requests that judgment be entered in his favor and against Defendant, AUTOMATED CONVERTING SOLUTIONS, INC., a/k/a ACS, in an amount which will fully and fairly compensates him for his losses which are in excess of the jurisdictional amount of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), plus any further relief this Honorable Court may deem just and necessary.

### COUNT II – NEGLIGENCE
### (AUTOMATED CONVERTING SOLUTIONS, INC., a/k/a ACS)

1-4. Plaintiff realleges and incorporates Paragraphs 1 through 4 of Count I as Paragraphs 1 through 4 of Count II as though fully set forth herein.

5. At all times relevant herein, ACS, had a duty to properly design, manufacture, advertise, distribute, sell, install and/or maintain the material handling machine in a reasonably safe manner for its intended and foreseeable use.

6. Despite said duty, on October 19, 2020, ACS, was guilty of one or more of the following careless and negligent acts and/or omissions:

    a. Permitted its product to be in an unsafe condition, when ACS knew or should have known such a condition might cause harm to users of the product;

    b. Failed to equip the product with adequate, if any, safeguards or other safety devices reasonably calculated to prevent injuries to the users of this product;

    c. Failed to design and/or manufacture the product so as to prevent the product from causing the type of injuries suffered by the Plaintiff;

    d. Failed to design a practical and technically feasible

        alternative that was available, and which would have prevented harm suffered by the Plaintiff without significantly impairing the usefulness, desirability or marketability of the ACS product or equipment;

    e.    Failed to provide a technically feasible design that was available that would have prevented the harm suffered by the plaintiff without significantly impairing the usefulness, desirability and marketability of the equipment;

    f.    Failed to provide adequate, if any warnings to users of the product, of the high degree of risk involved with the use of the product;

    g.    Was otherwise negligent in the design, manufacture, advertisement, distribution, sale, installation or maintenance of the product and at the time the equipment left the control of the manufacturer.

7.    As a proximate result of one or more of the negligent acts or omissions of ACS, Plaintiff, DAVID MEDINA, sustained severe and permanent injuries, and, as a result, has suffered losses of a personal and pecuniary nature, including, but not limited to, economic losses, medical expenses, pain and suffering, disfigurement, disability, and loss of a normal life. These losses have been incurred in the past and are reasonably certain to occur in the future. All or some of them are permanent.

WHEREFORE, plaintiff, DAVID MEDINA, respectfully requests that judgment be entered in his favor and against Defendant, AUTOMATED CONVERTING SOLUTIONS, INC., a/k/a ACS, in an amount which fully and fairly compensates him for his losses which are in excess of the jurisdictional amount of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), plus any further relief this Honorable Court deems just and necessary.

### COUNT III – INTENTIONAL TORT
### (MIDWEST CANVAS CORPORATION)

1-4.    Plaintiff realleges and incorporates Paragraphs 1 through 4 of Count I as Paragraphs 1 through 4 of Count III as though fully set forth herein.

5.    On and before October 19, 2020, Defendant, MCC, was an Illinois corporation

4

with its principal place of business in Chicago, Illinois.

6. In late 2018, MCC engaged ACS to design and build an A-Frame and a turret winder which were to operate in tandem and in a hands-free manner.

7. ACS designed and built the A-Frame and turret winder to MCC's specifications and delivered the machines to MCC's Chicago facility in May 2019.

8. The ACS designed and manufactured A-Frame received canvas material from a welder, folded it and directed it towards a turret winder which received the canvas material and spun it onto cardboard cores. This process was to be hands-free – or without intervention by a worker.

9. MCC knew, at the time the machines were delivered, that they did not operate hands-free and knew that in order for the machines to be operational, it was necessary for MCC employees to place their hands on the material being spun onto the turret winder.

10. At all times relevant, MCC knew that having its employees place their hands onto the spinning canvas material was risky and dangerous.

11. Despite knowing that operating the A-Frame and turret winder necessarily involved danger to its employees, MCC did not direct its employees to refrain from placing their hands on the spinning canvas material. To the contrary, MCC kept operating the A-Frame and turret winder over the course of 3 daily shifts.

12. In 2019, shortly after the ACS machines were delivered and placed into production by MCC, MCC employee Jimmy Mendoza was injured while operating the ACS A-Frame and turret winder and while placing his hand(s) on the spinning canvas material.

13. MCC made no changes to how its employees worked with these machines, did not instruct its employees to stop placing their hands onto the spinning canvas material, and made no changes or modifications to the machines.

14. MCC did not report or communicate the Jimmy Mendoza incident to ACS.

15. Following the Jimmy Mendoza incident, on July 7, 2019, MCC employee Gilberto Fuentes was injured using the ACS designed and manufactured machines and was injured in the same manner that Jimmy Mendoza was injured: while placing his hand(s) onto the spinning canvas material.

16. Again, despite being aware that having its employees place their hand(s) onto the spinning canvas material was risky and dangerous, and despite the fact that two of its employees were injured on these machines and while placing their hand(s) onto the spinning canvas material, MCC made no changes to how its employees worked with these machines, did not instruct its employees to stop placing their hands onto the spinning canvas material, and made no changes or modifications to the machines.

17. MCC did not report or communicate the Gilberto Fuentes incident to ACS.

18. Subsequent to the Gilberto Fuentes incident, but prior to October 19, 2020, MCC employee Francisco "Frankie", was injured while working with the ACS designed and manufactured machines, and while placing his hand(s) on the canvas material – in the same manner that Jimmy Mendoza and Gilberto Fuentes were injured.

19. Again, despite being aware that having its employees place their hand(s) onto the spinning canvas material was risky and dangerous, and despite the fact that now three of its employees were injured on these machines and while placing their hand(s) onto the spinning canvas material, MCC made no changes to how its employees worked with these machines, did not instruct its employees to stop placing their hands onto the spinning canvas material, and made no changes or modifications to the machines.

20. MCC did not report or communicate the Francisco "Frankie" incident to ACS.

21. On and before October 19, 2020, DAVID MEDINA was an employee of Defendant, MCC.

22. On and before October 19, 2020, MCC trained and instructed DAVID MEDINA

to use his hand(s) to guide the canvas material onto the spinning turret winder.

23. On and before October 19, 2020, when MCC trained and instructed DAVID MEDINA to use his hands to guide the canvas material onto the spinning turret winder, it knew that having its employees, including DAVID MEDINA, use their hands to guide the canvas material onto the spinning turret winder was risky and dangerous, and also knew that one or more of its employees had been injured on the same machine(s) and while placing their hand(s) on the canvas material to guide it onto the spinning turret winder.

24. On October 19, 2020, DAVID MEDINA, while working with the ACS designed and manufactured machines, was injured while using his hand to guide the canvas material onto the spinning turret winder, as he was trained and instructed to do by MCC.

25. On and before October 19, 2020, Defendant, MCC, by and through its employees, agents, and/or apparent agents, commanded and/or expressly authorized its employees, agents, and/or apparent agents to command other employees, including Plaintiff, DAVID MEDINA, to continue to use the defective and dangerous ACS machinery.

26. On October 19, 2020, Defendant, MCC, through these commands and/or authorizations, intentionally, and without accident, caused Plaintiff, DAVID MEDINA, to come into contact with the defective ACS machinery.

27. On October 19, 2020, Plaintiff, DAVID MEDINA, did not consent to using the dangerous and defective ACS machinery.

28. As a result of Defendant, MCC's commands and/or authorizations, Plaintiff, DAVID MEDINA, came into contact with the defective ACS machinery on October 19, 2020, and sustained severe and permanent injuries, and, as a result, has suffered losses of a personal and pecuniary nature, including, but not limited to, economic losses, medical expenses, pain and suffering, disfigurement, disability, and loss of a normal life. These losses have been incurred in the past and are reasonably certain to occur in the future. All or some of them are

permanent.

WHEREFORE, Plaintiff, DAVID MEDINA, respectfully requests that judgment be entered in his favor and against Defendant, MIDWEST CANVAS CORPORATION, in an amount which fully and fairly compensates him for his losses which are in excess of the jurisdictional amount of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), plus any further relief this Honorable Court deems just and necessary.

                                                                                                     s/Miguel A. Ruiz, Esq.
                                                                                                     One of Plaintiff's Attorneys

Miguel A. Ruiz, Esq.
Thomas H. Murphy, Esq.
James C. Edwards, Esq.
**COGAN & POWER, P.C.**
One East Wacker Drive, 38th Floor
Chicago, Illinois 60601
312-477-2500
312-477-2501 (Fax)
Firm No. 49741
mruiz@coganpower.com
tmurphy@coganpower.com
jedwards@coganpower.com
Assist.: dbarreto@coganpower.com
        nodonnell@coganpower.com